[Cite as *State v. Polizzi*, 2021-Ohio-244.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS. 2020-L-016** **2020-L-017** |
| ANTHONY J. POLIZZI, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeals from the Lake County Court of Common Pleas.
Case Nos. 2017 CR 000853 & 2017 CR 001390.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Mark Roy Devan* and *William Christopher Livingston*, Berkman, Gordon, Murray & Devan, 55 Public Square, Suite 2200, Cleveland, OH 44113 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Anthony J. Polizzi, Jr., appeals from the February 4, 2020 judgment entry of the Lake County Court of Common Pleas, following remand from this court, resentencing him to a total of 358 consecutive months in prison for sex offenses committed against two victims while he was their high school teacher. For the following reasons, we affirm the judgment of the trial court.

{¶2} Several years ago, appellant was employed as a history teacher at a small, private Christian high school in Lake County. Appellant was also a class advisor, mock trial advisor, and cross-country coach for the school. During his time there, appellant engaged in inappropriate sexual conduct with two female students—one in 2008 and another in 2010. Each student was 17 years old when the conduct commenced and over 18 years old when it terminated. Appellant was 31 to 33 years of age and married, now with children.

{¶3} Appellant was fired in 2010 after another student reported seeing him return to school with the 2010 victim. Following his termination, appellant completed law school, passed the bar examination, and began working as an attorney.

{¶4} In 2012, appellant sent the 2010 victim sexually explicit messages under a fictitious name. The victim immediately suspected appellant, who eventually acknowledged it was him. These messages alarmed the victim, and she contacted the authorities. Not much happened with the case until the 2010 victim was contacted by a new detective in 2017.

{¶5} On July 31, 2017, appellant was indicted on 24 counts alleging sexual contact and sexual conduct offenses committed against the 2010 victim. The case was assigned Lake County Court of Common Pleas Case No. 17 CR 000853. On December 29, 2017, appellant was indicted on 56 counts alleging sexual contact and sexual conduct offenses committed against the 2008 victim. The case was assigned Lake County Court of Common Pleas Case No. 17 CR 001390. The cases were eventually consolidated.

{¶6} On March 26, 2018, pursuant to a negotiated plea agreement, appellant pleaded guilty to one count of Gross Sexual Imposition (Felony 4) in each case and

2

three counts of Sexual Battery (Felony 3) in each case. The charges to which appellant pleaded involved acts of sexual touching compelled by force or threat of force, cunnilingus, fellatio, and digital penetration. The remaining charges in the indictments were dismissed. The plea agreement did not include an agreed sentence recommendation. The trial court referred appellant to the Department of Adult Probation for a presentence evaluation, psychiatric examination, and sex offender report.

{¶7} The presentence report indicates appellant has no criminal history, either prior to or subsequent to the instant offenses. Appellant's risk of recidivism under the Ohio Risk Assessment System is "9/Low." The report lists seven domains of risk to re-offend, two of which are categorized as "moderate" risk; to wit: education/employment and criminal attitudes/behavior. The other five domains—criminal history, family/social support, neighborhood, substance use, and peer associations—are categorized as "low" risk.

{¶8} The sex offender evaluation report indicates that appellant's risk of sexual recidivism, derived from an actuarial risk assessment tool, is "0". This falls in the "low" risk category. According to the most current norms relied on in the report, when a score of "0" is compared to a routine sample of other offenders with the same score, the five-year sexual recidivism rate is 2.8%. Said otherwise, for every 100 sex offenders with the same score, an average of 2 to 4 would be convicted of a new sex offense within five years. Only one area of assessment, the fact that the victims are unrelated, is elevated. The other nine areas of assessment are not elevated. The report also finds that appellant has no historic or immutable predictors of sexual recidivism.

{¶9} The evaluator noted there have been no known crimes or inappropriate sexual behaviors since appellant had committed these crimes, which occurred eight to ten years prior, and found no need for sex offender therapy. The evaluator ultimately assessed that appellant's prognosis is "decent" and his risk of an additional sex offense is "moderate," due to a concern with his sense of remorse and ability to take full responsibility for his actions.

{¶10} The victims provided written impact statements for the court's consideration, describing ongoing emotional and psychological harm resulting from appellant's sexual misconduct. They both described how naïve they were when appellant pursued them and that it was their first sexual experience of any kind.

{¶11} Appellant filed a sentencing memorandum, which included 11 letters in support from friends, family, colleagues, pastors, and community members. Many of the letters stated that appellant's behavior was out of character and that he was remorseful for his actions, although the focus in the majority of the letters was on the impact and harm that a harsh sentence would have on appellant and his family.

{¶12} Appellant was eligible for probation or community control. In the event the court sentenced him to prison, the range of the prison term for each of the two counts of Gross Sexual Imposition, a fourth-degree felony, was 6 to 18 months. For each of the six counts of Sexual Battery, a third-degree felony, the penalty ranged from 12 to 60 months in prison. The maximum possible prison term was 396 months.

{¶13} At the first sentencing hearing, the trial court heard from appellant, his wife and father, and both victims. The victims requested the trial court impose the maximum sentence. The prosecuting attorney recommended 10 years in prison in each case, to be served consecutively, for a total of 20 years in prison.

{¶14} The trial court ordered the maximum sentence on every charge in both cases—all to run consecutively—for an aggregate prison term of 396 months (or 33 years). Appellant was also classified a Tier III sex offender. On appeal, this court determined there was no support in the record for some of the trial court's consecutive sentence findings. We vacated the sentence and remanded the matter for resentencing. *State v. Polizzi*, 11th Dist. Lake Nos. 2018-L-063 & 2018-L-064, 2019-Ohio-2505.

{¶15} Prior to the resentencing hearing, the state submitted a sentencing memorandum with nine attachments of materials previously provided in the course of discovery. The attachments consisted of the following: (1) police reports detailing the investigation into appellant, which identified an additional student as a potential victim of appellant's inappropriate conduct and additional "grooming" behavior of the 2008 victim; (2) the 2012 correspondence between the 2010 victim and appellant, who was using a fictitious name and sexually explicit email address; (3) the expert report on adolescent sexual abuse of Diane Daiber, BSN, RN, SANE-A, SANE-P; (4) written statements from one of the victims, as well as from other students and teachers obtained during the investigation; and (5) a statement from appellant's former employer regarding his termination from the school.

{¶16} The trial court conducted a resentencing hearing on January 30, 2020. Both victims again made statements to the court. They each expressed the harm caused by appellant's actions, including issues with alcoholism, trust and intimacy issues, and struggles with extreme anxiety such as the need to be sedated during certain medical appointments.

{¶17} The trial court noted that the offenses against the 2008 victim occurred during a nine-month time period, and the offenses against the 2010 victim occurred during a two-month time period. The trial court then ordered 17 months in prison for each of the two counts of Gross Sexual Imposition and 54 months in prison for each of the six counts of Sexual Battery, all to be served consecutively, for a total of 358 months in prison (or nearly 30 years). Defense counsel made an objection for the record as to the consecutive nature of appellant's prison sentence. The trial court again classified appellant a Tier III sex offender with the most stringent lifetime reporting requirements. The judgment entry of re-sentence was journalized February 4, 2020.

{¶18} Appellant filed a timely notice of appeal and raises four assignments of error:

> [1.] The trial court erred in imposing consecutive sentences because imposing consecutive sentences violated the law of the case doctrine.
>
> [2.] The trial court erred in imposing consecutive sentences because imposing consecutive sentences violated appellant's constitutional right to due process of law.
>
> [3.] The trial court erred in imposing consecutive sentences because the record on remand did not justify imposing consecutive sentences.
>
> [4.] The trial court's imposition of an aggregate sentence of approximately 30 years imprisonment under the circumstances of this case amounts to cruel and unusual punishment under the Eighth Amendment of the United States Constitution and Article I, Section 9 of the Ohio Constitution.

## Law of the Case Doctrine

{¶19} In his first assignment of error, appellant argues the trial court violated the law of the case doctrine by imposing consecutive sentences on remand after this court already held in *Polizzi* that the record did not support consecutive sentences.

6

{¶20} "Briefly, the doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984) (citations omitted).

> The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts.

*Id.* (citations omitted). "Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." *Id.* (citations omitted); *accord State v. Patterson*, 11th Dist. Trumbull No. 95-T-5207, 1996 WL 210773, *5 (Mar. 29, 1996).

{¶21} Moreover, "absent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Id.* at syllabus, following *State ex rel. Potain v. Mathews*, 59 Ohio St.2d 29, 32 (1979) (noting that an example of an extraordinary circumstance "would be where a holding of the Court of Appeals is inconsistent with an intervening decision by this court."); *accord Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, ¶18 (where the Supreme Court held an intervening change in the law presented a compelling reason for the courts below to reexamine a point of law); *see also State v. Greenleaf*, 9th Dist. Summit No. 25848, 2012-Ohio-686, ¶6.

{¶22} In *Polizzi*, we sustained appellant's first and fifth assignments of error, in which he raised the following issues: (1) the record does not support the sentences imposed pursuant to R.C. 2929.11 and 2929.12; (2) the record does not support consecutive sentences under R.C. 2929.14(C)(4); and (3) the court failed to make sufficient findings under R.C. 2929.14(C)(4) in order to run the sentences imposed in each case consecutive to the sentences imposed in the other.

{¶23} We reviewed appellant's sentencing arguments under the standard provided in R.C. 2953.08(G)(2) and held as follows:[1]

- The record does not support some of the trial court's seriousness and recidivism findings under R.C. 2929.12, namely, that (1) appellant is likely to commit future crimes and (2) the harm caused to the victims is permanent or even the worst type of harm for the charged offenses;

- The record does not support some of the trial court's consecutive sentence findings under R.C. 2929.14(C)(4), namely, that (1) appellant's sentence is not disproportionate to the danger he poses to the public and (2) the harm caused by appellant's conduct was so great or unusual that no single prison term for any of the offenses he committed adequately reflects the seriousness of his conduct.

{¶24} Appellant's entire sentence was vacated. Our mandate to the trial court on remand was to resentence appellant consistent with our opinion. *Polizzi*, *supra*, at ¶47-48. In retrospect, our conclusion may have been rendered too imprecisely. Nevertheless, the trial court held a de novo sentencing hearing, pursuant to R.C. 2929.19(A), following which it reduced the prison terms previously imposed for each individual offense and again ordered all terms to be served consecutively.

---

1. We also stated, as dicta, that the trial court should not elevate the seriousness of appellant's sentences for sexual battery based on his status as a teacher to the victims, as this is a necessary element of the offense under R.C. 2907.03(A)(7).

8

{¶25} The trial court's resentencing entry provides, word for word, the exact same findings as its original sentencing entry with regard to the consecutive nature of the sentences. Clearly, therefore, the order for consecutive service of all prison terms at resentencing did not adhere to this court's mandate in *Polizzi*, in which we ordered the trial court to resentence appellant in part because the record did not support those findings.

{¶26} The question, then, is whether the trial court was bound to adhere to our mandate in *Polizzi*. We must answer this question in the negative. Although the trial court was confronted with substantially the same facts and issues as were involved in the prior appeal, our previous holding is inconsistent with two intervening decisions of the Supreme Court of Ohio on the issue of appellate review of felony sentences and consecutive service.

{¶27} Subsequent to *Polizzi*, a plurality of the Supreme Court declared that "* * * R.C. 2929.11 and 2929.12 both clearly apply only to *individual* sentences." *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, ¶17 (emphasis sic). "Because R.C. 2953.08(G)(2)(a) specifically mentions a sentencing judge's findings made under R.C. 2929.14(C)(4) as falling within a court of appeals' review, the General Assembly plainly intended R.C. 2953.08(G)(2)(a) to be the exclusive means of appellate review of consecutive sentences." *Id.* at ¶16 (citation omitted).

{¶28} A majority of the Supreme Court recently issued a further pronouncement that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones et al.*, ___ Ohio St.3d ___, 2020-Ohio-6729, ¶39. "Nothing in R.C. 2953.08(G)(2) permits an appellate court to

9

independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶42.

{¶29} In *Polizzi*, unlike the Fifth District Court of Appeals in *Gwynne*, we did not analyze the imposition of consecutive sentences solely under R.C. 2929.11 and 2929.12. We ultimately held that the record did not support the trial court's R.C. 2929.14(C)(4) findings. Nevertheless, our analysis regarding the R.C. 2929.14(C)(4) consecutive service findings was inextricably merged with our analysis regarding the R.C. 2929.12 seriousness and recidivism factors. *Polizzi*, *supra*, at ¶30-35. The trial court acknowledged this on the record at the resentencing hearing. We must conclude, therefore, that the Supreme Court's intervening decisions in *Gwynne* and *Jones et al.* created a change in the law that is inconsistent with the holding we reached in *Polizzi*. Accordingly, we cannot say the trial court violated the law of the case doctrine when resentencing appellant to consecutive sentences.

{¶30} Appellant's first assignment of error is without merit.

### Due Process of Law

{¶31} In his second assignment of error, appellant alleges the trial court violated his constitutional right to due process of law by imposing consecutive sentences on remand. Specifically, appellant contends that ordering consecutive service, after this court held it was not supported by the record, suggests the sentence was vindictive in the absence of an explanation related to appellant's post-sentence conduct.

{¶32} Appellant's reliance on the case law of *State v. Nichols* is inapposite. In *Nichols*, the Second District Court of Appeals reversed the trial court's imposition of maximum, consecutive sentences and remanded the matter for resentencing. *State v.*

10

*Nichols*, 195 Ohio App.3d 323, 2011-Ohio-4671 (2d Dist.). Upon a request for clarification from the state, the Second District instructed that a de novo sentencing hearing was not required and that neither party was entitled to offer additional evidence upon remand unless related to conduct or events that occurred after the time of the original sentencing proceeding. *State v. Nichols*, 2d Dist. Clark No. 2010 CA 60, 2011-Ohio-6805, ¶8-10.

{¶33} Here, however, appellant's original sentence was not merely reversed, it was vacated in its entirety. A de novo sentencing hearing was not only required upon remand, it was necessary. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, ¶15, citing R.C. 2929.19(A) ("A remand for a new sentencing hearing generally anticipates a de novo sentencing hearing."); *see also State v. Orlando Jones*, 8th Dist. Cuyahoga No. 85626, 2005-Ohio-4828, ¶7. Accordingly, the trial court was not limited to considering appellant's conduct since the time of his original sentencing hearing.

{¶34} The trial court conducted the resentencing hearing as an independent proceeding at which appellant was present and permitted to speak, defense counsel and the prosecuting attorney presented information relevant to the imposition of sentence, the victims were notified and permitted to make statements, all relevant factors were again considered, and the sentence was imposed anew. *See*, *e.g.*, *State v. Steimle*, 8th Dist. Cuyahoga Nos. 79154 & 79155, 2002-Ohio-2238, ¶14, citing R.C. 2929.19(A)(1), and *Orlando Jones*, *supra*, at ¶10-11.

{¶35} Additionally, appellant had no reasonable expectation of finality with respect to his sentence. Appellant successfully challenged his original sentence on direct appeal; this court properly vacated the sentence and remanded the case for resentencing; and the trial court was obliged to conduct a de novo sentencing hearing

11

and impose sentence anew. *See State v. Christian*, 159 Ohio St.3d 510, 2020-Ohio-828, ¶16-18, citing *United States v. DiFrancesco*, 449 U.S. 117, 136 (1980) and *State v. Roberts*, 119 Ohio St.3d 294, 2008-Ohio-3835, ¶16.

{¶36} All considered, appellant has failed to show that the imposition of consecutive sentences on remand was the product of actual vindictiveness, and the imposition of a shorter overall prison term does not imply a reasonable likelihood of vindictiveness. *See Alabama v. Smith*, 490 U.S. 794 (1989), citing *North Carolina v. Pearce*, 395 U.S. 711 (1969). Pursuant to controlling statutory and case law, appellant was afforded all process due upon remand of his vacated sentence.

{¶37} The imposition of consecutive sentences at resentencing did not violate appellant's constitutional right to due process of law.

{¶38} Appellant's second assignment of error is without merit.

### R.C. 2929.14(C)(4)

{¶39} Under his third assignment of error, appellant contends the trial court erred in imposing consecutive sentences because the record on remand does not support the trial court's findings under R.C. 2929.14(C)(4).

{¶40} We review this argument under the standard provided in R.C. 2953.08(G)(2), which provides, in relevant part:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. * * *
>
> The appellate court may take any action authorized by this division if it clearly and convincingly finds * * * (a) that the record does not

12

support the sentencing court's findings under * * * division (C)(4) of section 2929.14 * * *.

{¶41} As noted by the Supreme Court in *Jones et al.*, this review is more limited than the review that was available to the reviewing court prior to the amendment of the statute in 2000. The prior version permitted the reviewing court to determine that "The record does not support the sentence." *Jones et al., supra*, at ¶35. We are no longer permitted to consider this "broad stand-alone provision." *Id.* at ¶37. The current version as stated above only allows us to consider whether the record supports the findings made in determining whether consecutive sentences are warranted.

{¶42} There is a statutory presumption that multiple prison terms are to be served concurrently. R.C. 2929.41(A). If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court makes certain findings under R.C. 2929.14(C)(4). The court must find that "the consecutive service is necessary to protect the public from future crime or to punish the offender." It must also find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Finally, the court must find at least one of the following:

> (a) The offender committed one or more of the multiples offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

13

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶43} As stated on the record at the resentencing hearing and in the resentencing judgment entry, the trial court found that consecutive sentences "are necessary to protect the public from future crime or to punish the Defendant"; "are not disproportionate to the Defendant's conduct and the danger the Defendant poses to the public"; and, applying subsection (b), that "at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses committed by the Defendant was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the Defendant's conduct."

{¶44} Appellant takes issue with all three findings. He contends the record does not support that (1) he poses a danger to the public; (2) consecutive sentences are not disproportionate to his conduct and the danger he poses to the public; and (3) the harm caused by his offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of his conduct.

{¶45} With regard to the first argument, we note the trial court found, as required under the statute, that consecutive service is necessary to protect the public from future crime *or* to punish appellant. Whether the record supports the former is not dispositive, and appellant does not take issue with the latter. Accordingly, this argument is not well taken.

{¶46} We further conclude, with regard to the third argument, that the record supports the trial court's finding that a single prison term would not adequately reflect

14

the seriousness of appellant's conduct. There were two victims of appellant's conduct, multiple offenses, and each has suffered enduring emotional and psychological harm. There also exists a valid concern with the scope of appellant's remorse for his conduct. Appellant should be held accountable to these victims with consecutive sentences.

{¶47} Finally, we find no merit with appellant's second argument. We cannot clearly and convincingly find that the record does not support the trial court's finding that consecutive sentences are not disproportionate to appellant's conduct and the danger he poses to the public. The offenses appellant committed against the 2008 victim occurred during a nine-month period of time, and those committed against the 2010 victim occurred during a two-month period of time. The record demonstrates that appellant had no criminal history prior to these offenses and no juvenile adjudications. Appellant's sex offender evaluation reports a low to moderate risk of recidivism, which is further supported by the fact that he has no criminal record subsequent to these offenses. Even so, without minimizing the fact that appellant has not reoffended, appellant's conduct was deplorable and caused undeniable psychological harm to the victims. It is further apparent that appellant's lack of genuine remorse and failure to appreciate the consequences his actions have had on the victims present a danger to the public. According to some of the statements and interviews included in the record, appellant spent time grooming his victims in order to obtain their consent and then threatened them with expulsion if they told anyone about the sexual conduct. In fact, this conduct resurrected two years after the 2010 relationship ended by appellant sending an explicit, surreptitious message.

{¶48} This is not to say there are no concerns with the overall length of the harsh sentence imposed here. It is, in fact, even a 10-year increase over what the state

15

had recommended. However, the sentence is within the range permitted by law, and our review is limited, under R.C. 2953.08(G)(2)(a), to whether the record clearly and convincingly does not support the trial court's findings under R.C. 2929.14(C)(4). The options before the trial court with regard to the imposition of consecutive sentences ranged from an aggregate term of 71 months to an aggregate term of 358 months in prison. This broad range of the potential prison term magnifies the need for more meaningful review of felony sentences than currently permitted under R.C. 2953.08(G)(2)(a). Based on the pronouncement in *Gwynne* that the R.C. 2929.11 and 2929.12 factors only apply to *individual* sentences, what is there to guide a trial court and/or a reviewing court when confronted with such a broad range of potential sentencing? Felony sentencing statutes must be read as a whole, and "by the express language of R.C. 2929.12(A), R.C. 2929.11's sentencing purposes and R.C. 2929.12's seriousness and recidivism factors are no less operative when a trial court is imposing consecutive sentences than when a trial court is imposing an individual sentence." *Gwynne*, *supra*, at ¶67 (Donnelly, J., dissenting). "Appellate review adds an important dimension to fundamental justice and is an important check on trial courts' sentencing decisions. To bolster the public's confidence in the justice system, appellate courts must [be permitted to] exercise the statutory powers granted to them by the General Assembly to determine the proper application of the laws to a trial court's sentencing decisions." *Id.* at ¶90 (Donnelly, J., dissenting).

{¶49} We are bound to follow the precedent of the Supreme Court of Ohio, however, which clearly provides that R.C. 2953.08(G)(2) does not permit an appellate court to substitute its judgment for that of the trial court. *See Jones et al.*, *supra*, at ¶30.

{¶50} Appellant's third assignment of error is without merit.

16

**Cruel and Unusual Punishment**

{¶51} Under his fourth assignment of error, appellant contends an aggregate sentence of approximately 30 years in prison for a first-time offender convicted of third- and fourth-degree felonies violates the constitutional prohibition against cruel and unusual punishment.

{¶52} The Eighth Amendment to the United States Constitution applies to the states pursuant to the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660 (1962). The amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Section 9, Article I of the Ohio Constitution sets forth the same restriction: "Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted."

{¶53} "'"The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."'" *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, ¶13, quoting *State v. Weitbrecht*, 86 Ohio St.3d 368, 373 (1999), quoting *Harmelin v. Michigan*, 501 U.S. 957, 997 (1991) (Kennedy, J., concurring). The Supreme Court of Ohio has held, however, that this "proportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed consecutively." *Id.* at ¶20. "Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment." *Id.* at syllabus.

{¶54} Here, each individual sentence is within the statutory range for each offense, and appellant has not challenged any of the statutes upon which his sentences

17

are based.  Further, appellant's proportionality argument is based on the imposition of consecutive service, the length of which is attributable to the number of offenses he committed.  Because appellant does not contend that the individual sentences imposed by the court are grossly disproportionate to the offenses he committed, he has not established that the cumulative length of his incarceration constitutes cruel and unusual punishment under the United States or Ohio constitutions.

{¶55}  With respect to this holding, we further adopt the Supreme Court's cautionary conclusion in *Hairston*:

> [T]his case should not be heralded as a signal for future sentencing courts to impose maximum, consecutive terms of incarceration in all cases.  Although *Foster* eliminated judicial fact-finding, courts have not been relieved of the obligation to consider the overriding purposes of felony sentencing, the seriousness and recidivism factors, or the other relevant considerations set forth in R.C. 2929.11, 2929.12, and 2929.13.  When imposing sentence, courts must be faithful to the law, must not be swayed by public clamor, media attention, fear of criticism, or partisan interest, and must be mindful of the obligation to treat litigants and lawyers with dignity and courtesy.

*Id.* at ¶25; *see also Gwynne, supra*, at ¶88 (Donnelly, J., dissenting) ("Consecutive and lengthy sentences must be reserved for the worst offenses and offenders.").

{¶56}  Appellant's final assignment of error is without merit.

{¶57}  The judgment of the Lake County Court of Common Pleas is hereby affirmed.


CYNTHIA WESTCOTT RICE, J., concurs,

THOMAS R. WRIGHT, J., concurs in part and dissents in part with a Dissenting Opinion.

_____

18

THOMAS R. WRIGHT, J., concurs in part and dissents in part with a Dissenting Opinion.

{¶58} I concur in part and dissent in part. I concur to the extent that the first, second and fourth assignments of error are without merit. As to the third assignment, I dissent.

{¶59} It is now abundantly clear that pursuant to *Gwynne* and *Jones*, R.C. 2929.11 and R.C. 2929.12 play no role in the review of consecutive sentences due to amendment of R.C. 2953.08. Those cases, however, in no way limit our ability to review consecutive sentences under the applicable statutes, i.e. R.C. 2953.08(G) and R.C. 2929.14(C)(4).

{¶60} R.C. 2953.08 states:

{¶61} "(G)(1) If the sentencing court was required to make the findings required by division (B) or (D) of section 2929.13 or division (I) of section 2929.20 of the Revised Code, or to state the findings of the trier of fact required by division (B)(2)(e) of section 2929.14 of the Revised Code, relative to the imposition or modification of the sentence, and if the sentencing court failed to state the required findings on the record, the court hearing an appeal under division (A), (B), or (C) of this section shall remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings.

{¶62} "(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

19

{¶63} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶64} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶65} "(b) That the sentence is otherwise contrary to law."

{¶66} R.C. 2929.14(C)(4) states:

{¶67} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:"

{¶68} Multiple terms were imposed for convictions of multiple offenses. And the functional effect of R.C. 2929.14(C) is that all are required to be run concurrent unless a trial court finds and the record supports that consecutive service is *necessary*:

> 1. to protect the public from future crimes *or* to punish the offender; *and*

> 2. that consecutive sentences are not disproportionate to the seriousness of the offender's conduct; *and*

3. are not disproportionate to the danger the offender poses to the public.

{¶69} The statute is written in both the disjunctive and conjunctive. Thus, the first prong is satisfied when either of the conditions are met but the remaining two prongs are written in the conjunctive, meaning both must be present for each successive, consecutive prison term.

{¶70} With respect to the danger Polizzi poses to the public, the record establishes that he has no prior criminal history; that his sex offender evaluations report a low to moderate risk of committing future sex crimes (the odds of him committing future sex offenses is 2.8% or for every 100 sex offenders with the same score, between 2 to 4 would recommit); that Polizzi has no history of immutable predictors of sex crimes; that Polizzi had no inappropriate sexual behavior in the eight to ten years between these offenses and conviction; and that after assessment, he has no need for sex offender therapy.

{¶71} Polizzi did, however, lack genuine remorse and exhibited anger toward the victims once his conduct was revealed. And according to some statements and interviews, Polizzi groomed his victims and secured their silence by suggesting that they would be expelled from school if they told anyone.

{¶72} While I cannot conclude that the record does not clearly and convincingly support the sentencing court's findings and decision to impose consecutive sentences for some of the prison terms, I clearly and convincingly find the record does not support the findings to impose consecutive sentences for all of the multiple offenses, rebuttably presumed to run concurrent, in light of the minimal danger Polizzi poses to the public.

{¶73} Polizzi's sentence is 29 years and 10 months. Modification is warranted.

21